**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FREDERICO BRUNO, <br><br>           Petitioner, <br><br>    v. <br><br> ADMINISTRATOR, NEW JERSEY STATE PRISON, *et al.,* <br><br>        Respondents. | Civil Action No. 22-1470 (JXN) <br><br><br> <u>**OPINION**</u> |

<u>**NEALS**</u>, District Judge

*Pro Se* Petitioner Frederico Bruno ("Petitioner"), an individual currently confined at New Jersey State Prison in Trenton, New Jersey, filed the instant petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254. (ECF No. 1.) For the reasons expressed below, the Court denies the Petition and denies a certificate of appealability.

## I. BACKGROUND[1]

The New Jersey Superior Court, Appellate Division provided the following factual summary of the proofs of trial:

> [Petitioner] broke into an apartment where his three-month-old son, the son's mother, and the mother's friend resided. [Petitioner] brought a meat cleaver into the apartment, brandished it, and slashed the friend's face and arm. The mother, who was in the same area, tried to protect the son, but [Petitioner] threatened to kill her, punched her in the face, and attempted to take the son. The violence continued in the apartment. Video footage captured the mother and son going through a window and hitting the ground. Thereafter, [Petitioner] found them and

---

[1] The factual background is taken from the record submitted by the parties; the facts relevant to the individual claims for relief are discussed in the analysis section of the Opinion. Some of the state court records, including the Transcripts of the state court proceedings, were filed in connection with Petitioner's habeas corpus petition. The Court adopts Respondent's method of citing these records as "1T" through "17T" and cites to them respectively.

struck the mother with a chair, which was also captured on video. Tragically, the son died. In the apartment, the police located the meat cleaver that [Petitioner] utilized, and on the roof, they found gloves worn by [Petitioner] during the attacks.

*State v. Bruno*, A-0144-19, 2021 WL 867036 at * 1 (N.J. Super Ct. App. Div. March 9, 2021.)

Petitioner was charged with first-degree murder, N.J.S.A. § 2C:11-3(a)(1) or (a)(2) (Count One); first-degree felony murder, N.J.S.A. § 2C:11-3(a)(3) (Count Two); second-degree burglary, N.J.S.A. § 2C:18-2 (Count Three); first-degree attempted murder, N.J.S.A. § 2C:5-1 and N.J.S.A. § 2C:11-3 (Counts Four and Five); second-degree aggravated assault, N.J.S.A. § 2C:12-1(b)(1) (Counts Six and Seven); fourth-degree unlawful possession of a weapon, N.J.S.A. § 2C:39-5(d) (Counts Eight, Ten and Twelve); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. § 2C:39-4(d) (Counts Nine, Eleven, and Thirteen); second-degree witness tampering, N.J.S.A. § 2C:28-5(a) (Count Fourteen); third-degree endangering an injured victim, N.J.S.A. § 2C:12–1.2 (Counts Fifteen, Sixteen, and Seventeen); second-degree endangering the welfare of a child, N.J.S.A. § 2C:24-4(a) (Count Eighteen); and fourth-degree obstructing the administration of justice, N.J.S.A. § 2C:29-1 (Count Nineteen). (*See* ECF No. 9-2 at 35-39.) The jury convicted Petitioner on the lesser included charge of aggravated manslaughter under Count One, as well as Counts Two through Eighteen. *Bruno*, 2021 WL 867036 at * 1. The court sentenced Petitioner to an aggregate prison term of 113 years with seventy-six and one-half years without parole eligibility.[2] *State v. Bruno*, A-0435-15T1, 2017 WL 5898780 at * 1 (N.J. Super. Ct. App. Div. Nov. 28, 2017).

---

[2] The court merged Counts One and Three into Two and sentenced Petitioner to fifty years in prison subject to the No Early Release Act (NERA), N.J.S.A. § 2C:43–7.2. The court merged Counts Six, Ten, Eleven, Twelve, and Thirteen into Count Four and imposed a prison term of twenty years subject to the No Early Release Act ("NERA"), consecutive to Counts Two and Fifteen. The court merged Counts Seven, Eight, and Nine into Count Five and imposed a twenty-year prison term subject to NERA, consecutive to Counts Two, Four, Five, Fourteen, Fifteen, and Sixteen. On Count Fourteen, the court sentenced Petitioner to seven years in prison, consecutive to Counts Two, Four, Fifteen, and Sixteen. On Count Fifteen, Petitioner received a five-year prison term, consecutive to Count Two. On Count Seventeen, the court imposed a four-year prison term, consecutive to Counts Two, Four, Five, Fourteen,

Petitioner filed a Notice of Appeal with the Appellate Division. On November 29, 2017, the Appellate Division affirmed Petitioner's judgment of conviction. *Bruno*, 2017 WL 5898780. The New Jersey Supreme Court denied Petitioner's petition for certification. (ECF No. 9-2 at 206.)

Petitioner filed a post-conviction relief ("PCR") petition on July 16, 2014. (ECF No. 9-2 at 219-222.) On August 5, 2016, the PCR court denied his petition. (*See* ECF No. 9-3 at 58-78.) Petitioner appealed, and the Appellate Division affirmed the denial. *Bruno*, 2021 WL 867036. The New Jersey Supreme Court then denied his petition for certification. *State v. Bruno*, 262 A.3d 417 (2021).

Petitioner filed his instant habeas petition on March 7, 2022. (ECF No. 1.) Petitioner asserts twelve grounds for relief. Respondents filed an answer. (ECF No. 9.) Petitioner filed a reply. (ECF No. 12.)

## II. STANDARDS OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides that the district court "shall entertain an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based on the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). District courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010).

---

Fifteen and Sixteen. And on Count Eighteen, the court imposed a ten-year prison term, concurrent to Counts Two, Four, Five, Fourteen, Fifteen, Sixteen, and Seventeen. *Bruno*, A-0435-15T1, 2017 WL 5898780 at * 1, n.1. On the same day, the court sentenced Petitioner to a three-year term on accusation 12-7-451, consecutive to the above sentence. (*See* Sentencing Transcript dated August 6, 2015 ("16T") 49:7-14, ECF No. 9-18.)

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (*quoting Renico*, 559 U.S. at 773). As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 574 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28

4

U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

Finally, to the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering a procedurally defaulted claim, and stating that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## III.  ANALYSIS

### A.  Ground One: Unanimity Jury Instruction

In Ground One, Petitioner argues that the requested specific unanimity instruction should have been given because the state's alternative theories were not conceptually similar but, rather, were contradictory, relying on different acts and different evidence, thus reasonably giving rise to the danger of a fragmented sentence. (ECF No. 1 at 15.)

Petitioner raised this claim on direct appeal, and the Appellate Division found the claims meritless, reasoning as follows:

> We reject [Petitioner's] assertion that a special unanimity instruction was required in this case. To be sure, a jury verdict must be unanimous to convict a defendant of a crime. *State v. Parker*, 124 N.J. 628, 633 (1991), cert. denied, 503 U.S. 939, 112 S. Ct. 1483, 117 L. Ed. 2d 625 (1992); *see also* R. 1:8–9. "[T]he unanimous jury requirement impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue." *Parker*, *supra*, 124 N.J. at 633 (quoting *United States v. Gipson*, 553 F.2d 453, 457 (5th Cir. 1977)).

The consensus of a jury requires "substantial agreement as to just what a defendant did." *State v. Frisby*, 174 N.J. 583, 596 (2002) (quoting *Gipson*, *supra*, 553 F.2d at 457). In most instances, a general unanimity instruction will suffice without any special additional instructions. *Id.* at 597. Such a special instruction may only be necessary in situations where:

> (1) a single crime could be proven by different theories supported by different evidence, and there is a reasonable likelihood that all jurors will not unanimously agree that the defendant's guilt was proven by the same theory; (2) the underlying facts are very complex; (3) the allegations of one count are either contradictory or marginally related to each other; (4) the indictment and proof at trial varies; or (5) there is strong evidence of jury confusion.

> [*State v. Cagno*, 211 N.J. 488, 517 (2012) (citing *Frisby*, *supra*, 174 N.J. at 597), cert. denied, 568 U.S. 1104, 133 S. Ct. 877, 184 L. Ed. 2d 687 (2013).]

As the Court explained in *Parker*, when a series of alleged criminal acts committed by a defendant involves acts that are "conceptually similar," no special jury instruction on unanimity is required to segregate those acts. *Parker*, *supra*, 124 N.J. at 639.

[Petitioner] argues the trial judge erred by denying his request for specific unanimity instructions to the jury. He contends that the State presented two theories for the murder of the child: [Petitioner] physically forced the girlfriend out of the window while she was holding the child; or his actions inside the apartment made her fear for her own life and the child's life, and therefore she jumped out of the window while holding the child. [Petitioner] maintains that these theories are dissimilar factually thereby warranting the specific instruction.

The judge rejected [Petitioner's] request for the specific unanimity jury charge by considering the State's theories and the applicable law. In rejecting the request and applying *Parker*, the judge found that

> [t]he State's theory . . . as to why [the girlfriend] and [the child] went out [of] the window has consistently been focused on the conduct of [Petitioner] in the apartment. Specifically, that it was [Petitioner's] direct physical conduct based on his assault of [the girlfriend] and the [friend] which caused [the girlfriend] to go out [of] the window.

> Here, [Petitioner] is alleged to have been in the process of assaulting [the girlfriend] when she exited the apartment window with [the child] in her arms. Both of the State's theories rely on its

evidence that [the child's] death was a result of [Petitioner's] assault in the apartment.

. . .

The State's two theories . . . are based on [Petitioner's] conduct within the apartment. Although jurors may disagree as to how [the girlfriend] went out [of] the window, all the jurors would still be unanimous in that [the girlfriend] exited the window as a direct consequence of [Petitioner's] conduct[,] which must be established beyond a reasonable doubt.

Therefore, I do not find that a special interrogatory is required, and that I will instruct the jurors that they may find the defendant guilty provided [that] the State proves causation beyond a reasonable doubt. Specifically, the jury will be instructed that [it] may find either that [the girlfriend] went out of the window as a result of the physical contact of [Petitioner] or as a result of her exiting to escape the assault that was occurring.

Thus, as the judge correctly found, under either theory, [Petitioner's] physical conduct toward the girlfriend forced her out of the window. Similar to the Court's decision in *Parker*, "[b]ecause the acts alleged were conceptually similar, there was no reason to give a specific unanimity charge." *Parker*, *supra*, 124 N.J. at 639. "[T]here was no genuine possibility of jury confusion about its responsibility" to unanimously find [Petitioner's] conduct inside the apartment caused the girlfriend to exit the window. *Id.* at 642.

*Bruno*, 2017 WL 5898780 at * 2-3.

That a jury "instruction was allegedly incorrect under state law is not a basis for habeas relief." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir.) (quoting *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)), cert. denied, 534 U.S. 919 (2001). A petitioner can, therefore, only show an entitlement to habeas relief based upon allegedly inadequate jury instructions where the petitioner proves that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). That a challenged instruction was "undesirable, erroneous, or even universally condemned" is insufficient to warrant habeas relief; a petitioner can only prevail on such a claim by showing

that the instruction rendered his trial fundamentally unfair. *Id.* Additionally, courts may not judge the instruction in isolation but must consider the instruction "in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72.

Where the error is the omission of an instruction, a petitioner's burden is "especially heavy" because an omission is "less likely to be prejudicial than a misstatement of the law." *See Estelle*, 502 U.S. at 155. In such a case, a petitioner must demonstrate that the omission was so "inconsistent with the rudimentary demands of fair procedure" as to result in a miscarriage of justice. *See Smith v. Arvonio*, Civ. No. 93-25, 1994 WL 327123, *3 (D.N.J. June 24, 1994) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Here, the Appellate Division did not unreasonably apply clearly established federal law when it rejected Plaintiff's unanimity instruction claim. The Appellate Division explained that the evidence of Petitioner's assault of the victims inside the apartment supported both theories of how Petitioner's girlfriend and child went out of the apartment window. Petitioner's actions inside the apartment resulted in his child and girlfriend going out of the window. Thus, because the evidence used to support both theories of how they went out of the window was the same, the Appellate Division affirmed the trial court's decision that an unanimity instruction was not required. Petitioner has not shown that the lack of a special unanimity instruction rendered his trial fundamentally unfair or resulted in a miscarriage of justice. *Hill*, 368 U.S. at 428. Accordingly, Petitioner has not raised a valid constitutional claim. Petitioner is denied habeas relief with respect to Ground One.

## B.  Second Ground: Cruel and Unusual Punishment at Sentencing

In his second ground for habeas relief, Petitioner argues that it is cruel and unusual punishment that a felony murder conviction leads to a greater sentence than aggravated

8

manslaughter. (ECF No. 1 at 15.) Petitioner argues that aggravated manslaughter has a more culpable mental state requirement. Thus, the punishment is grossly disproportionate, and it serves no legitimate penological objective to punish a negligent homicide more severely than a reckless homicide. (*Id.*)

Petitioner raised this claim on direct appeal, and the Appellate Division found it meritless. The Appellate Division reasoned as follows:

> [Petitioner] contends for the first time that his prison sentence for felony murder amounts to cruel and unusual punishment. [Petitioner] equates felony murder with a crime of negligent homicide. [Petitioner] argues therefore that his sentence for felony murder is grossly disproportionate and serves no legitimate penological objective.
>
> N.J.S.A. 2C:11–3(b)(1) requires the imposition of a minimum period of thirty years of parole ineligibility for a felony murder conviction. We have previously held that this minimum sentence does not violate the Federal or State constitutions. *State v. Johnson*, 206 N.J. Super. 341, 349 (App. Div. 1985), certif. denied, 104 N.J. 382 (1986).
>
>> It is firmly settled that the broad power to declare what shall constitute criminal conduct and to fix both the maximum and minimum terms of imprisonment for such conduct has been committed by the people of this State to the legislative, rather than to the judicial branch of government. *State v. Hampton*, 61 N.J. 250, 273 (1972). *See also State v. Smith*, 58 N.J. 202, 211 (1971). The fact that our Legislature has provided a more severe punishment for criminal acts than the courts approve is no grounds for judicial interference, unless a constitutional or other prohibition against such punishment has been violated. In making this determination, our Supreme Court in *State v. Hampton*, *supra*, expressed the view that "courts consider whether the nature of the criticized punishment is such as to shock the general conscience and to violate principles of fundamental fairness; whether comparison shows the punishment to be grossly disproportionate to the offense, and whether the punishment goes beyond what is necessary to accomplish any legitimate penal aim." 61 N.J. at 273–[ ]74. Thus, "[a]bsent such a showing[,] the judiciary must respect the legislative will." *Id.* at 274.
>>
>> [*Johnson*, *supra*, 206 N.J. Super. at 343 (second alteration in original).]

Felony murder is an absolute liability crime because a defendant need not have contemplated or intended the victim's death. *State v. Martin*, 119 N.J. 2, 20 (1990); *see also State v. McClain*, 263 N.J. Super. 488, 491 (App. Div.), certif. denied, 134 N.J. 477 (1993); *State v. Darby*, 200 N.J. Super. 327, 331 (App. Div. 1984), certif. denied, 101 N.J. 226 (1985). The only mental state required for felony murder is the specific mental culpability required to commit one of the particular underlying felonies specified in N.J.S.A. 2C:11–3(a)(3). *See Darby*, *supra*, 200 N.J. Super. at 331. Thus, any comparison to the sentences imposed for a felony murder conviction and what [Petitioner] has labeled as "negligent homicide" is misplaced.

. . .

Our review of sentencing determinations is limited. *State v. Roth*, 95 N.J. 334, 364–65 (1984). We will not ordinarily disturb a sentence imposed which does not shock the judicial conscience. *State v. O'Donnell*, 117 N.J. 210, 215–16 (1989). In sentencing, the judge "first must identify any relevant aggravating and mitigating factors set forth in N.J.S.A. 2C:44–1(a) and (b) that apply to the case." *State v. Case*, 220 N.J. 49, 64 (2014). The judge must then "determine which factors are supported by a preponderance of [the] evidence, balance the relevant factors, and explain how [he or she] arrives at the appropriate sentence." *O'Donnell*, *supra*, 117 N.J. at 215. We are "bound to affirm a sentence, even if [we] would have arrived at a different result, as long as the trial court properly identifie[d] and balance[d] aggravating and mitigating factors that [were] supported by competent credible evidence in the record." *Ibid.*

. . .

In reviewing a sentence subject to NERA, "we must . . . be mindful of the real-time consequences of NERA and the role that it customarily plays in the fashioning of an appropriate sentence." *State v. Marinez*, 370 N.J. Super. 49, 58 (App. Div.), certif. denied, 182 N.J. 142 (2004). In order to do that, the reviewing court must "consider the judge's evaluation of the aggravating and mitigating factors in that light." *Ibid.* During [Petitioner's] sentencing, the judge gave a detailed analysis of the aggravating and mitigating factors, how they applied to each count, and the facts that supported his decision.

Consequently, there is no reason to second-guess the trial court's application of the sentencing factors, nor any reason to conclude that the sentence "shocks the judicial conscience." *Roth*, *supra*, 95 N.J. at 364; *see also State v. Bieniek*, 200 N.J. 601, 612 (2010) (reiterating that appellate courts must accord deference to trial judges in sentencing decisions).

*Bruno*, 2017 WL 5898780 at * 3-4.

A federal court's ability to review state sentences is limited to challenges based on "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987)). Thus, federal courts may not review a challenge to a state court's discretion at sentencing unless it violates a separate federal constitutional limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984)); *see also* 28 U.S.C. § 2254(a).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (citations omitted). "A court must consider three proportionality factors when evaluating Eighth Amendment challenges: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions." *United States v. Burnett*, 773 F.3d 122, 136 (3d Cir. 2014) (citing *Solem v. Helm*, 463 U.S. 277, 290-92 (1983)). "In conducting this analysis, a court grants substantial deference to legislative decisions regarding punishments for crimes." *Id.*

The first factor acts as a gateway to the proportionality inquiry. The Eighth Amendment only forbids sentences that are "grossly disproportionate" for a conviction for the crime involved. *Butrim v. D'Ilio*, No. 14-4628, 2018 WL 1522706, at *16–17 (D.N.J. Mar. 28, 2018). If the petitioner fails to demonstrate a gross imbalance between the crime and the sentence, a court's analysis of an Eighth Amendment challenge ends. Successful proportionality challenges in non-capital cases are "exceedingly rare." *Ewing*, 538 U.S. at 21 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)); *United States v. Burnett*, 773 F.3d 122, 136–37 (3d Cir. 2014). "Absent colorable allegations that his sentence constitutes cruel and unusual punishment . . . or that it is

arbitrary or otherwise in violation of due process, the legality and length of his sentence are questions of state law" over which this Court has no jurisdiction. *E.g., Rabaia v. New Jersey*, No. 15-4809, 2019 WL 699954, at *12–13 (D.N.J. Feb. 20, 2019) (citing *Chapman v. United States*, 500 U.S. 453, 465 (1991)).

Although Petitioner argues that his felony murder conviction equates to a conviction for negligent homicide, the Appellate Division explained that this argument is legally inaccurate and in New Jersey felony murder is a crime of absolute liability, where the mental state required is the specific mental culpability required to commit one of the particular underlying felonies specified in N.J.S.A. 2C:11–3(a)(3), not that of negligent homicide. *Bruno*, 2017 WL 5898780 at * 4. The trial court sentenced Petitioner to thirty years for felony murder, which is below the statutory limit for felony murder in New Jersey. New Jersey authorizes a life sentence for first-degree felony murder. N.J.S.A. § 2C:11–3(b)(1) ("Murder is a crime of the first degree but a person convicted of murder shall be sentenced . . . by the court to a term of 30 years, during which the person shall not be eligible for parole, or be sentenced to a specific term of years which shall be between 30 years and life imprisonment of which the person shall serve 30 years before being eligible for parole."). "Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011).

Additionally, courts in this District have found that even life sentences for felony murder do not rise to the level of disproportionality that violates the Eighth Amendment. *See Wilson v. Cathel*, No. 04-4705, 2006 WL 3796863, at *10 (D.N.J. Dec. 21, 2006) (finding that a life sentence for felony murder did not rise to the level of disproportionality that violates the Eighth Amendment); *Peoples v. Cathel*, No. 05-5916, 2006 WL 3419787, at *12 (D.N.J. Nov. 21, 2006)

(same). Here, Petitioner broke into his girlfriend's apartment, attacked her roommate with a meat cleaver, and then attacked his girlfriend while she was holding their baby. This precipitated Petitioner's girlfriend and baby falling out of the apartment window, resulting in the death of the baby. *Bruno*, 2021 WL 867036 at * 1. A thirty-year sentence for felony murder is not disproportionate. Consequently, Petitioner's sentence for felony murder does not violate the Eighth Amendment. As such, Petitioner's second ground for habeas relief is denied.

### C. Ground Three: Excessive Sentencing

In Ground Three, Petitioner alleges that the trial court failed to address the real-time consequences of his sentence, which has the practical effect of life imprisonment without the possibility of parole under the No Early Release Act, and that his overall sentence was excessive. (ECF No. 1 at 15-16.)

On direct appeal, the Appellate Division explained that their review of sentencing determinations is limited, and the court will not ordinarily disturb a sentence imposed which does not shock the judicial conscience. *Bruno*, 2021 WL 867036 at * 4. The Appellate Division found Petitioner's claim meritless, ruling as follows:

> We reject [Petitioner's] contention that the judge failed to address the "real-time" consequences of the No Early Release Act (NERA), N.J.S.A. 2C:43–7.2, component to his sentence. [Petitioner] argues that his sentence is otherwise excessive. We conclude that [Petitioner's] sentencing arguments are "without sufficient merit to warrant discussion in a written opinion." R. 2:11–3(e)(2). We add the following brief remarks.
>
> . . .
>
> In reviewing a sentence subject to NERA, "we must . . . be mindful of the real-time consequences of NERA and the role that it customarily plays in the fashioning of an appropriate sentence." *State v. Marinez*, 370 N.J. Super. 49, 58 (App. Div.), certif. denied, 182 N.J. 142 (2004). In order to do that, the reviewing court must "consider the judge's evaluation of the aggravating and mitigating factors in that light." *Ibid.* During [Petitioner's] sentencing, the judge gave a

> detailed analysis of the aggravating and mitigating factors, how they applied to each count, and the facts that supported his decision.
>
> Consequently, there is no reason to second-guess the trial court's application of the sentencing factors, nor any reason to conclude that the sentence "shocks the judicial conscience." *Roth*, *supra*, 95 N.J. at 364; *see also State v. Bieniek*, 200 N.J. 601, 612 (2010) (reiterating that appellate courts must accord deference to trial judges in sentencing decisions).

*Bruno*, 2021 WL 867036 at * 4.

The No Early Release Act ("NERA"), codified in N.J.S.A. 2C:43-7.2, provides that individuals convicted of first-degree, second-degree, and certain enumerated offenses must serve at least eighty-five percent of their custodial sentence without eligibility for parole. When sentencing a defendant to a NERA custodial term, the sentencing court must "be mindful of the real-time consequences of NERA and the role that it customarily plays in the fashioning of an appropriate sentence." *State v. Marinez*, 370 N.J. Super. 49, 58 (App. Div. 2004). In analyzing the real-time consequences, the sentencing court must weigh the aggravating and mitigating factors. *Ibid.*

As explained above, absent a claim that a sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment or that it is arbitrary or otherwise in violation of due process, the legality and length of a sentence are questions of state law over which this Court has no jurisdiction under § 2254. *See Chapman*, 500 U.S. at465  (holding that under federal law, "the court may impose . . . whatever punishment is authorized by statute for [an] offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment"). Here, Petitioner argues that his aggregate sentence was excessive, and application of the NERA had the practical effect of a sentence of life imprisonment without the opportunity for parole. (ECF No. 1 at 15-16.) However, NERA expressly applies to first-degree felony murder and first-

14

degree attempted murder. *See* N.J.S.A. § 2C:11-3(a)(3), § 2C:5-1, and § 2C:11-3. Additionally, as noted by the Appellate Court, the sentencing judge gave a very lengthy and detailed analysis of the aggravating and mitigating factors and how they applied to each count. (*See* 16T 41:12 to 44:19.) The sentencing court noted that Petitioner lacked remorse and that instead of rendering aid to his dying son after the child fell out the window, Petitioner proceeded to continue his assault on his girlfriend. (*See* 16T 39:20 to 40:7.)

Petitioner received an aggregate prison term of 113 years with seventy-six and one-half years without parole eligibility. *Bruno*, 2017 WL 5898780 at * 1. As explained above, New Jersey authorizes a life sentence for first-degree felony murder, which is only one of the crimes of which Petitioner was convicted. N.J.S.A. § 2C:11–3(b)(1). Petitioner's sentence is within the statutory limit of a life sentence for a felony murder conviction. If Petitioner's sentence is proportional to his felony murder conviction alone, then it follows that it is proportional when his other convictions are considered. Petitioner has failed to show that the sentence amounted to cruel and unusual punishment in violation of the Eighth Amendment. Consequently, this ground for habeas relief is denied.

### D. Grounds Four and Six: Juror Bias

In Ground Four, Petitioner alleges his Sixth Amendment right to a fair trial was violated when the trial court failed to exclude juror number eight after the juror saw him handcuffed. (ECF No. 1 at 16.) In Ground Six, Petitioner argues that he was denied a fair trial by an impartial jury when the trial court failed to probe into possible jury prejudice.[3] (*See id.* at 18.)

---

[3] Petitioner does not provide specifics regarding the factual allegation behind Ground Six. However, on collateral appeal to the Appellate Division, Petitioner argued that juror number five was not impartial due to the fact that he admitted to knowing two family members of one of the victims. (*See* ECF No. 9-2 at 111-115.) The Court will presume that here, Petitioner is raising a claim regarding the possible prejudice of juror number five.

First, the Court notes that the PCR court dismissed this claim finding Petitioner failed to raise it on direct appeal, thus, that it was barred under R. 3:22-4(a). (*See* ECF No. 9-3 at 74-75.) On appeal, Petitioner argued that direct

*Juror Number Eight*

Petitioner raised his claim regarding juror number eight on direct appeal to the Appellate

Division. The Appellate Division denied the claim as follows:

> Under the Sixth Amendment of the United States Constitution and Article I, paragraph 10 of the New Jersey Constitution "the right of a defendant to be tried by an impartial jury is of exceptional significance." *State v. Williams*, 93 N.J. 39, 60 (1983). The securing and preservation of an impartial jury goes to the very essence of a fair trial. *See Sheppard v. Maxwell*, 384 U.S. 333, 362–63, 86 S. Ct. 1507, 1522, 16 L. Ed. 2d 600, 620 (1966). It is well established "that a defendant is entitled to a jury that is free of outside influences and will decide the case according to the evidence and arguments presented in court in the course of the criminal trial itself." *Williams*, supra, 93 N.J. at 60.

> Where it appears that outside influences may have influenced jurors, "the trial judge must take action to assure that the jurors have not become prejudiced as a result of facts which 'could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the court's charge.'" *State v. Bisaccia*, 319 N.J. Super. 1, 12 (App. Div. 1999) (quoting *State v. Scherzer*, 301 N.J. Super. 363, 486 (App. Div.), certif. denied, 151 N.J. 466 (1997)). The test is not whether the irregularity actually influenced the jurors but "whether it had the capacity of doing so." *Panko v. Flintkote Co.*, 7 N.J. 55, 61 (1951). "[W]here . . . there is the possibility of actual juror taint or exposure to extraneous influences (including jury misconduct and comments made to jurors by outside sources), the judge must voir dire that juror and, in appropriate circumstances, the remaining jurors." *Bisaccia*, *supra*, 319 N.J. Super. at 13 (citation omitted). In *Scherzer*, *supra*, 301 N.J. Super. at 487–88 (citation omitted), we summarized the trial judge's obligation stating:

>> The thrust of the New Jersey and federal cases on mid-trial allegations of jury misconduct is that the trial judge must make a probing inquiry into the possible prejudice caused by any jury irregularity, relying on his or her own objective evaluation of the potential for prejudice rather than on the jurors' subjective evaluation of their own impartiality. Although the trial judge has discretion in the way to investigate allegations of jury misconduct,

---

appeal counsel was ineffective for failing to raise the claim. While it appears that the claim may be procedurally defaulted due to Petitioner's failure to raise the claim on direct appeal, the Court need not determine if it is defaulted. The Court can address the claim *de novo* on the merits under 28 U.S.C. § 2254(b)(2). *Bronshtein*, 404 F.3d at 728 (considering a procedurally defaulted claim and stating that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here"). Therefore, the Court will address Ground Six on the merits.

> an adequate inquiry on the record is necessary for the purposes of appellate review.
>
> The record reveals that the judge engaged in proper inquiries when faced with apparent juror taint, and in his sound discretion determined that there was not any prejudice. Taking into account "[a] decision on the potential bias of a prospective juror is addressed to the sound discretion of the trial judge," *State v. Carroll*, 256 N.J. Super. 575, 599 (App. Div.), certif. denied, 130 N.J. 18 (1992); *see also State v. Singletary*, 80 N.J. 55, 62–63 (1979), the judge did not abuse his discretion by allowing the trial to proceed without removing the juror.

*Bruno*, 2021 WL 867036 at * 5.

The trial court performed the following voir dire of juror number eight regarding any potential bias that was created from observing Petitioner in handcuffs:

| | |
|---|---|
| The Court: | Hi. How are you? Come on over. Just a question for you. After we recessed at lunch, did you and after you left the courtroom, did you see any of the attorneys, [Petitioner], or any of the witnesses after you left the courtroom? |
| Juror: | I went to the ladies room. And I walked outside. I did see him being taken to the back by the elevators. |
| The Court: | Okay. |
| . . . | |
| The Court: | Okay. You indicated you saw [Petitioner]? |
| Juror: | Yeah. I saw [Petitioner] going into the room with the mirror by the elevator. |
| . . . | |
| The Court: | While you were referring to [Petitioner], what exactly did you observe? |
| Juror: | I saw him being taken into the back. He was facing in the direction of the door. He was wearing handcuffs. |
| The Court: | Seeing him in handcuffs, would that affect your ability to be fair and impartial in this case? |
| Juror: | No. I kind of presume that he would be in handcuffs. |

17

| | |
|---|---|
| The Court: | Why did you -- explain that a little more. Some of the questions -- let me ask -- let me explain to you. We have to make a record of everything that goes on here. |
| Juror: | Sure. |
| The Court: | So please don't try to read into the questions. My questions are designed to make sure we have a full record of everything. Okay. So why did you presume he – |
| Juror: | Because he's the defendant, and I presumed that he was incarcerated. |
| The Court: | The fact that you presumed he was incarcerated, does that affect how you feel about the fact that he was presumed innocent in this case? |
| The Juror: | No. |
| The Court: | Okay. Well, did the fact that [Petitioner's] incarcerated have any effect on your ability to evaluate the evidence; if the State failed to prove the case beyond a reasonable doubt; could you render a verdict of not guilty? |
| Juror: | Yes. |
| The Court: | And if the State established and proved the case beyond a -- the elements of the offenses beyond a reasonable doubt, would you be able to vote guilty? |
| Juror: | Yes. |
| . . . | |
| The Court: | Did you mention what you observed to any of the other jurors? |
| Juror: | No. |
| The Court: | Okay. And you would have absolutely no difficulty evaluating this case based on what you observed? |
| Juror: | No. |

| The Court: | Okay. I'm going to ask you to go back to the jury room. Please don't discuss either what you observed or what we spoke about with any of the other jurors. |
| Juror: | I understand. |

(Trial Transcript dated May 19, 2015 ("9T") 101:5 to 104:8, ECF No. 9-12.)

A criminal defendant has a constitutional right to appear before a jury free of visible restraints. *Deck v. Missouri*, 544 U.S. 622, 626–29 (2005). Visible shackling of a criminal defendant during trial "undermines the presumption of innocence and the related fairness of the factfinding process" and "affront[s] the dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Deck*, 544 U.S. at 630–31 (quoting *Illinois v. Allen*, 397 U.S. 337, 344 (1970)). As such, the use of visible restraints is prohibited "absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck*, 544 U.S. at 629.

With respect to allegedly unconstitutional restraints at trial, a habeas petitioner is only entitled to relief where the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). The Third Circuit has "long held that a brief, unintended glimpse of a defendant in handcuffs is not inherently prejudicial and does not require a mistrial without an affirmative showing of actual prejudice." *United States v. Roane*, 338 F. App'x 127, 130 (3d Cir. 2009) (citing *United States v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974) ("The fact that a jury may briefly see a defendant in handcuffs is not so inherently prejudicial as to require a mistrial")).

The Appellate Division noted that the trial court performed an inquiry into juror number eight's observation and potential bias. Additionally, the Appellate Division determined that the trial judge did not abuse his discretion in finding no prejudice. Petitioner has failed to provide

evidence or argument to contradict the state courts' factual determinations by clear and convincing evidence. *See Miller-El v. Cockrell*, 537 U.S. 322, 324 (citing 28 U.S.C § 2254(e)(1).)

Under the circumstances, juror number eight's brief view of Petitioner in handcuffs is not so inherently prejudicial as to require a mistrial, especially considering that the evidence against Petitioner included video footage of Petitioner assaulting his girlfriend after she fell out of the apartment window. *United States v. Fredericks*, 684 F. App'x 149, 164-65 (3d Cir. 2017) ("At issue in this case is whether a brief, inadvertent observation of a defendant in handcuffs offends a defendant's constitutional rights . . . 'Because a jury's brief or inadvertent glimpse of a defendant in physical restraints is not inherently or presumptively prejudicial to a defendant, [defendant] must demonstrate actual prejudice to establish a constitutional violation. [Defendant] did not examine the jury and has adduced no other evidence probative of prejudice. He has failed to establish actual prejudice'") (internal citations omitted). Petitioner has failed to show the actual prejudice necessary to establish a constitutional violation. Petitioner has not shown that the Appellate Division findings were contrary to or an unreasonable application of clearly established federal law. For the foregoing reasons, Ground Four is denied.

### *Juror Number Five*

During Petitioner's trial, a sheriff's officer informed the trial judge that juror number five had advised the officer that he knew one of the individuals sitting in the galley. (*See* Trial Transcript dated May 14, 2015 ("8T") 69:23 to 7-5, ECF No. 9-11.) The individual was one of the victim's brothers. (*See* 8T 70:11-12.) The sheriff's officer informed the court that the juror had indicated that the individual worked in the building next to his and that they frequented the

same cafeteria but that he did not personally know him. (*See* 8T 70:25 to 71:7.)   The court

performed the following voir dire of juror number five:

| | |
|---|---|
| The Court: | . . .  You've brought something to the attention of my sheriff's officer. |

. . .

| | |
|---|---|
| The Court: | What's his father's name? |
| Juror: | It's Jose. |
| The Court: | How often do you see him in the  - - |
| Juror: | About once a month, I think. |
| The Court: | Do you - - you talk to him at all? |
| Juror: | Yeah. |
| The Court: | Is that where you see him? |
| Juror: | I see him like walking in the building. I don't see him in the cafeteria, but I see him walking in the building. |
| The Court: | Are you - - and said you know his father. How do you know his father? |

(Indiscernible conversation among the parties)

| | |
|---|---|
| The Court: | And you still see the father now? |
| Juror: | No, the father got laid off. |
| The Court: | Does he work for the same company as you? |
| Juror: | No. He works in the same building as all my clients. |

. . .

| | |
|---|---|
| The Court: | I just want to - -  I'm going to make sure that the appropriate space is maintained, so that there's no incidental contact between him and you during the course of the trial. |

| Juror: | Okay. I just don't want to make things awkward between me and him, you know? |
|--------|--------|
| The Court: | Right. |
| . . . | |
| The Court: | I would ask though that you don't speak to any of the jurors about it. |
| Juror: | Hm-Hm |
| The Court: | Okay. You can judge the case based on the evidence that you hear during the trial? You won't have any difficulty doing that? |
| Juror: | I shouldn't have any difficulty doing that, but, like I said, I just thought I'd bring it to you attention. |

(8T 72:22 to 76:16.)

Generally, jurors are presumed to be impartial, and it "is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723. As the Supreme Court has recently reiterated, "juror impartiality . . . does not require ignorance." *Skilling v. United States*, 561 U.S. 358, 381 (2010); *see also Mu'Min v. Virginia*, 500 U.S. 415, 430 (1991). Thus, removal is required only upon the showing of "the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality." *Irvin*, 366 U.S. at 723 (quoting *Reynolds v. United States*, 98 U.S. 145, 157 (1878)). The proper remedy to address potential juror partiality is a hearing to assess actual bias — "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 215, 217 (1982).

Here, the trial court's actions addressing the possibility of juror bias were reasonable. The judge individually questioned juror number five regarding how he knew the family members of the victim. Juror number five indicated that they worked in the building next to his. The trial

judge questioned juror number five on whether he could evaluate the case based on the evidence presented at trial, and he indicated that he could. Petitioner has not shown that there was a constitutional error in failing to excuse juror number five. Accordingly, the Court denied habeas relief on Ground Six.

### E.  Grounds Five and Seven: Prosecutorial Misconduct

In Ground Five, Petitioner argues that the trial court erred in denying Petitioner's motion for a mistrial based on prosecutorial misconduct. (ECF No. 1 at 17.) Petitioner claims that the state's failure to disclose a key piece of evidence warranted a mistrial. (*Id.*) In Ground Seven, Petitioner alleges that he was denied his constitutional right to confrontation and cross-examination of his accuser by virtue of the state's alleged misconduct. (*Id.* at 20.)  Petitioner fails to provide any context for these grounds for relief. However, on collateral appeal, Petitioner argued that he was denied the right to cross-examine the victim because trial counsel learned during the trial that the state had met with the victim prior to trial, and the state had withheld that information. (*See* ECF No. 9-2 at 102-109, 126-127; *see also* ECF No. 9-3 at 72-73.) The Court construes the instant Grounds Five and Seven as raising the grounds for relief that were raised on collateral appeal and will discuss the two claims together.[4]

The PCR court provided the following background:

The State called Figueroa [Petitioner's girlfriend and one of the victim's here] to testify. During cross-examination, trial counsel learned for the first time that Figueroa had previously discussed the case with the assistant prosecutor. Figueroa stated that she met with the assistant prosecutor several times for an hour each time. Trial counsel then voiced his concerns to the court at sidebar:

Judge, the surprise evidence, because I had no idea that she had ever met with anybody from the Prosecutor's Office because every

---

[4] The PCR court also dismissed this claim finding Petitioner failed to raise it on direct appeal, thus, that it was barred under R. 3:22-4(a). As explained above, the Court need not determine if Grounds Five and Seven are defaulted, as the Court may address the merits under 28 U.S.C. § 2254(b)(2). *Bronshtein*, 404 F.3d at 728. Therefore, the Court will address Grounds Five and Seven on the merits.

> single report that I had in discovery said they hadn't spoken to her
> at all since their attempts to see her in 2012. So, it is a surprise to
> me, and I was surprised and that's why I'm moving for a mistrial
> because of - of this discovery violation. I should have been
> apprised of this long time ago, and I should have been made aware
> that there were meetings. So that's my position, Judge. This is a
> violation.
>
> Responding to his concerns, the trial court said that the State is
> "not obligated to record and author reports dealing with every
> interaction with . . . a witness." The trial court further found that
> portions of Figueroa's testimony were a "surprise" to the assistant
> prosecutor, and that Figueroa's cross-examination testimony
> established that she "has a significant memory issue . . . after the
> event." The trial court then denied trial counsel's motion for
> mistrial.

(*Id.* at 66-67.)

The Appellate Division denied Petitioner's claims, "affirm[ing] substantially for the reasons given by [the PCR judge]." *Bruno*, 2021 WL 867036 at * 2. The Appellate Division added that Petitioner's arguments regarding testimony by one witness and purported prosecutorial misconduct are "unsupported by the record and amount to bald assertions insufficient to establish a prima facie claim for PCR." *Id.* at 3. The Appellate Division affirmed the PCR court reasoning. Although the PCR court found this claim procedurally barred under Rule 3:22-4(a), for the sake of completeness, the PCR analyzed the merits of the claim as follows:

> A prosecutor's meeting with a State witness is not discoverable, unless the
> interview produces exculpatory information. R. 3:12-3(b). Petitioner offers no
> evidence that the assistant prosecutor's meeting with Figueroa produced
> exculpatory information. Further, as the trial court stated, it would be "incredibly
> unusual" if, in "a case of this magnitude, the defense did not believe [the State] at
> any point had some interaction with the witness and that the State simply put the
> witness on [the stand] cold without ever speaking to [Figueroa]." Given the
> absence of a discovery violation, as well as common practice of meeting
> witnesses prior to trial, the trial court exercised its sound discretion in not granting
> a mistrial.

(ECF No. 9-3 at 73.)

Under *Brady v. Maryland*, the prosecution has a duty to turn over evidence favorable to the accused where the evidence is material to either guilt or punishment, 373 U.S. 83, 87 (1963), including evidence that would serve to impeach the credibility of a witness, *Wilson v. Beard*, 589 F.3d 651, 659 (3d Cir. 2009). This rule requires disclosure of information actually known to the prosecution and "all information in the possession of the prosecutor's office, the police, and others acting on behalf of the prosecution." *Wilson*, 589 F.3d at 659. To constitute a *Brady* violation, the undisclosed evidence must meet three criteria: "'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). In other words, a verdict will be overturned for a *Brady* violation only if the petitioner can establish both "that evidence in the possession of the government was actually suppressed, and . . . that the suppressed evidence was material." *Slutzker v. Johnson*, 393 F.3d 373, 386 (3d Cir. 2004).

Additionally, pursuant to Supreme Court precedent, trial judges have broad discretion in deciding whether to grant a mistrial and "may declare a mistrial whenever, in their opinion, taking all the circumstances into consideration, there is a 'manifest necessity' for doing so, [ ] but the power ought to be with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Renico*, 559 U.S. at 773–74. There are no hard and fast rules regarding what conditions constitute a "manifest necessity" requiring a mistrial; instead, the determination must be based on the particular facts and circumstances of the case. *Russo v. Superior Ct. of New Jersey*, 483 F.2d 7, 13 (3d Cir.1973); *Crawford v. Fenton*, 646 F.2d 810, 817 (3d Cir.1981).

25

At trial, Ms. Figueroa testified that she had met with the assistant prosecutor prior to trial. (*See* 9T 22:23 to 28:18.) At sidebar, defense counsel objected and moved for a mistrial, arguing that he was not given discovery regarding a previous interview with the victim. (*See* 9T 28:23 to 29:7.) The state argued that no record was made of the conversations with Ms. Figueroa because they were informal conversations. (*See generally* 9T 29:8 to 31:14.) The state explained that Ms. Figueroa had previously testified under oath at a restraining order hearing regarding the facts of this case and that Ms. Figueroa's testimony at trial in no way differed from what she testified to during a restraining order hearing before the trial judge. (*Id.*) The state noted that during their pre-trial conversations with Ms. Figueroa, she did not recall anything additional from her previous hearing testimony. (*Id.*) The state explained that defense counsel had a copy of Ms. Figueroa's sworn testimony from the restraining order hearing and argued there was no discovery violation. (9T 31:13-20.)

The trial court noted that it wasn't clear that Ms. Figueroa had testified to anything she told the state in any previous conversation. (9T 39:11-13.) The trial court also found that the state was not required to give defense counsel a report if nothing substantive happened. (9T 16-18.) The judge explained that there is no rule that requires a prosecutor to memorialize every time she speaks to a witness. (9T 40:10-14.) The trial judge also found that the prosecutor, as an officer of the court, represented that Ms. Figueroa did not state anything different in her meetings with the prosecutor than what she testified to during the restraining hearing. (9T 41:21-25.) The trial court denied Petitioner's motion for a mistrial, ruling that there was no discovery violation, as the state was "not obligated to record and author reports dealing with every interaction with [] a witness" and nothing in Ms. Figueroa's trial testimony was new or inconsistent with her testimony from the restraining order hearing. (9T 47:24 to 48:3, 48:25 to 49:2.)

The record indicates that defense counsel had a copy of Ms. Figueroa's sworn testimony from the restraining order hearing and had ample opportunity to cross-examine Ms. Figueroa at trial. Petitioner does not argue that Ms. Figueroa testified to any information that was not contained in her prior hearing testimony. Additionally, Petitioner does not show and fails to even argue that the state's conversations with Ms. Figueroa produced any exculpatory or impeaching information as required by *Brady*. *Strickler*, 527 U.S. at 281-82. Petitioner has failed to meet the standard to show that a *Brady* violation occurred. As Petitioner has failed to show a *Brady* violation, the Court finds that the trial judge did not abuse its discretion in denying Petitioner's motion for a mistrial. Consequently, Petitioner's fifth and seventh grounds for habeas relief are denied.

## F. Ground Eight: Ineffective Assistance of Trial Counsel, Petitioner's Right to Testify

In his eighth ground for relief, Petitioner argues that he was deprived of his constitutional right to testify on his own behalf due to trial counsel's ineffectiveness in failing to prepare Petitioner to testify. (ECF No. 1 at 22.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective.  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690.  Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See*

27

*id.* at 689.   Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBride v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012).   "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case.  The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice

suffered by the defendant as a result of the alleged deficiencies . . .   If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

When assessing a claim of ineffective assistance of counsel in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant*, 709 F.3d at 232 (quoting *Harrington*, 562 U.S. at 101). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Pinholster*, 563 U.S. at 190).   Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland* "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

On collateral appeal, the Appellate Division denied Petitioner's claims, "affirm[ing] substantially for the reasons given by [the PCR judge]." *Bruno*, 2021 WL 867036 at * 2. The Appellate Division added that Petitioner's "argument that he was deprived of the right to testify is belied by the trial record." *Id.* at 3. The PCR court noted that on collateral appeal, Petitioner claims that he had a "'deep desire to testify at trial and profess his innocence,' but that trial counsel told him not to." (ECF No. 9-3 at 76.) Petitioner claimed that "trial counsel failed to 'provide[] [him] with the information that he needed to make [an] intelligent and informed decision regarding his case,' including whether to testify at trial." (*Id.*) The PCR court noted that Petitioner claimed that "trial counsel told him 'it would be better if [Petitioner] did not testify

because of the alleged voluntary statement he provided to law enforcement.'" (*Id.*) The PCR court denied Petitioner's ineffective assistance of trial counsel claim for the following reasons:

> This was sound advice; the State would have thoroughly cross-examined and impeached [P]etitioner over his statement to police in which he alleged, among other outlandish and improbable claims, that Figueroa voluntarily jumped out her apartment window with their three-month old baby. Petitioner cannot now claim "that he did not know what to expect during the trial if he were to testify.[]"  Nor can [P]etitioner claim that he was not aware of his right to testify. First, [P]etitioner only asserts that trial counsel advised him not to testify; he does not assert that trial counsel prevented him from testifying. Second, the trial court informed [P]etitioner of his "absolute right to testify" and his "absolute right not to testify." The trial court added, "[e]ither way, the decision is yours." Petitioner was then instructed to consult with trial counsel should he have any questions. The following week, the trial court asked [P]etitioner if he had enough time to speak with trial counsel on his decision to testify; [P]etitioner said yes. The trial court asked [P]etitioner if he wanted to testify; [P]etitioner said no. The trial court asked [P]etitioner if he wanted the jury to be instructed on his right to remain silent; [P]etitioner said yes. Petitioner voluntarily and knowingly waived his right to testify.

(*Id.* at 76-77.)

This Court must apply AEDPA deference to the state court's decision unless it was contrary to or an unreasonable application of *Strickland*. *Branch v. Sweeney*, 758 F.3d 226, 233 (3d Cir. 2014).  The state court found that trial counsel was not ineffective because his advice that Petitioner should not testify was sound advice, so this Court must be "doubly deferential" on habeas review. *See Woods v. Etherton*, 578 U.S. 113, 117 (2016) ("When the claim at issue is for ineffective assistance of counsel, AEDPA review is 'doubly deferential,' because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' In such circumstances, federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'" (quoting *Pinholster*, 563 U.S. at 190, *Burt v. Titlow*, 571 U.S. 12, 16 (2013))).

30

The record reflects that the trial court advised Petitioner of his right to testify at trial and informed him that while he should discuss the decision with his attorney, the decision was Petitioner's to make. (*See* Trial Transcript dated May 20, 2015 ("10T") 134:2-20, ECF No. 9-13.) Subsequently, the trial court asked Petitioner if he had spoken to his attorney about testifying, and Petitioner indicated that he had, and his decision was to not testify at trial. (*See* Trial Transcript dated May 26, 2015 ("12T") 48:5-23, ECF No. 9-15.) Notwithstanding Petitioner's knowing and voluntary waiver of his right to testify, the state courts reasonably found that counsel was not ineffective for advising Petitioner not to take the stand.

The state court did not unreasonably apply the first prong of *Strickland*. Petitioner gave a lengthy statement to police in which he claimed that Figueroa and her roommate were the ones who attacked Petitioner with knives. (*See generally* ECF No. 9-3 at 121-282.) Petitioner claimed that while they were attacking him, one of the women accidentally stabbed the other woman. (*Id.*) Petitioner told police that he hid under the bed, and Figueroa jumped out of the window on her own with the baby after she thought Petitioner had fled the apartment. (*Id.*) The prosecution would have thoroughly cross-examined Petitioner regarding this statement. This record supports the state court's conclusion that counsel's advice was the result of sound trial strategy. The state court's determination that trial counsel did not render ineffective assistance by advising Petitioner not to testify was not an unreasonable application of *Strickland*. Consequently, this claim provides no basis for habeas relief.

### G.  Ground Nine: Ineffective Assistance of Trial Counsel, Failure to Call a Witness

In Ground Nine, Petitioner argues that trial counsel was ineffective for failing to present a defense by calling Dermaine Scott as a defense witness.[5] (ECF No. 1 at 23.) Petitioner argues

---

[5] In Ground Nine, Petitioner also claims trial counsel was ineffective for failing to call Petitioner as a witness. (*See* ECF No. 1 at 23.) The Court addressed that claim in Ground Eight above and will not address it further.

that Dermaine Scott's testimony would have helped to establish Petitioner's innocence. (*Id.*) Although Petitioner does not further explain his claim, on PCR appeal, Petitioner argued that Ms. Figueroa had called him and invited him to her home. (*See* ECF No. 9-2 at 153-154.) Petitioner argued that the phone call negated the burglary count. (*See id.*) Petitioner claimed that he was in the presence of Scott when he received the phone call and Scott would have testified regarding the phone call. (*See id.*)

Petitioner raised this claim on collateral appeal, and the Appellate Division found it meritless. *Bruno*, 2021 WL 867036 at * 3. The Appellate Division cited the standard set forth in *Strickland* and then denied Petitioner's claim as follows:

> Without any competent showing, [Petitioner] argues his trial counsel failed to produce a witness who would have testified that [Petitioner] had been invited into the apartment. [Petitioner] contends that such testimony would have negated the burglary and felony murder charges by demonstrating that he went to the apartment with permission and without the intent to commit an offense. During his statement to the police, [Petitioner] never mentioned the bald assertion that he was invited there. Moreover, even if [Petitioner] mentioned that fact to the police or [Petitioner's] proposed witness would have testified to that fact, it would have been completely contrary to the overwhelming evidence of guilt, such as the friend's testimony at trial, [Petitioner] bringing the weapon to the apartment, the gloves police recovered from the roof, the video showing the mother and son going through the window, and [Petitioner] beating the mother on the ground with a metal chair.

*Id.*

The right of an accused to present witnesses in his own defense "is a fundamental element of due process of law." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)). As such, a failure to investigate potentially exculpatory evidence or witnesses may form the basis of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 690–91; *see also Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4–5 (D.N.J. May 2, 2016). With respect to witnesses, "[c]ounsel has a duty to make reasonable

investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-91; *see also Rolan*, 445 F.3d at 682 (finding attorney's decision to not pursue a self-defense claim was unreasonable because attorney failed to investigate witnesses the prosecution told him "were not alibi witness[es]," and thus, the decision was "uninformed").

Here, even assuming arguendo that Petitioner's trial counsel was ineffective for failing to call Scott as a witness, Petitioner must also show that there is a reasonable probability that the outcome of this trial would have been different had his counsel called Scott as a witness at trial. The Appellate Division did not unreasonably apply *Strickland's* prejudice prong in finding that the evidence against Petitioner at trial was overwhelming and any testimony from Scott would have been "completely contrary" to the evidence of Petitioner's guilt.

At trial, Figueroa's roommate testified that the meat clever recovered from the crime scene was brought there by Petitioner. (8T 85:19 to 25.) Figueroa and her roommate both testified that Petitioner wore black gloves during the attack. (8T 85:15-18; 9T 13:16-18.) Those gloves were later recovered on the roof of the apartment building. (8T 164:1-17.) Additionally, video evidence showed Petitioner attacking Figueroa with a metal chair after she fell out of the apartment window holding her son. (9T 73:1 to 77:12; 81:4 to 82:11.) To meet *Strickland's* prejudice prong, Petitioner must show a "'substantial,' not just 'conceivable,' likelihood of a different result." *Shinn v. Kayer*, 141 S.Ct. 517, 523 (2020) (citing *Pinholster*, 563 U.S. at 189). Petitioner has not shown that Scott's testimony would have produced a different result, considering the trial testimony that Petitioner brought a meat clever and gloves with him to the apartment and continued his attack after Figueroa fell out of the apartment window. As the Appellate Division did not unreasonably apply *Strickland* or rely on an unreasonable

33

determination of the facts in rejecting this claim, Petitioner is denied habeas relief as to Ground Nine.[6]

## H.  Ground Eleven: Ineffective Assistance of Appellate Counsel for Failing to Raise Claims on Direct Appeal

In Ground Eleven, Petitioner argues that he was denied the effective assistance of appellate counsel. (ECF No. 1 at 27.) Petitioner alleges that he asked "appellate counsel to raise several issues, but appellate counsel refused, telling Petitioner to raise them himself." (*Id.*) Petitioner again fails to provide any further details regarding this claim. On PCR appeal, collateral appeal counsel argued that direct appeal counsel was ineffective for failing to raise the issues raised in Petitioner's PCR petition that could have been raised on direct appeal. (ECF No. 9-2 at 162-164.) The PCR court noted that Petitioner argued that direct appeal counsel was ineffective for failing to argue that (1) the trial court erred in denying Petitioner's motion for a mistrial based on prosecutorial misconduct and (2) the trial court failed to assure that the jury was not prejudiced by juror number five. (ECF No. 9-3 at 71.) The Court construes Ground Eleven as arguing that direct appeal counsel was ineffective for failing to raise these two grounds of trial court error on direct appeal.

The PCR court found Petitioner's claims that the trial court erred (1) in denying Petitioner's motion for a mistrial based on the prosecution's failure to produce discovery regarding the state's interviews with Figueroa prior to trial and (2) in not excusing juror number five were procedurally barred by Rule 3:22-4(a) due to Petitioner's failure to raise the claims on direct appeal. (*See* ECF No. 9-3 at 72-74.) These are the grounds for habeas relief raised by Petitioner in Grounds Five, Six, and Seven discussed above. This Court noted the PCR court's

---

[6] In Ground Ten, Petitioner reiterates the claims raised in Grounds Eight and Nine, arguing the trial counsel was ineffective for denying Petitioner of his right to testify and for failing to present a defense. (*See* ECF No. 1 at 25.) As such, Ground Ten is denied for the reasons discussed above in Grounds Eight and Nine.

finding that Grounds Five, Six, and Seven were procedurally barred. However, the Court thoroughly reviewed Grounds Five, Six, and Seven on the merits and found the claims meritless.

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259 (2000). After a detailed analysis of Grounds Five, Six, and Seven, this Court found the claims meritless. It is well-settled that counsel cannot be ineffective for failing to raise a meritless claim. *See Strickland*, 466 U.S. at 691 (finding that failure to pursue "fruitless" claims "may not later be challenged as unreasonable"); *see also United States. v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.") Petitioner cannot show that direct appeal counsel was ineffective for failing to raise these meritless claims on appeal. Accordingly, Ground Eleven is denied.

### I. Ground Twelve: PCR Evidentiary Hearing

In his twelfth ground for habeas relief, Petitioner argues that he should have been granted an evidentiary hearing on the ineffective assistance of counsel claims raised in his petition for post-conviction relief. (ECF No. 1 at 28-29.)

Petitioner has no federal right to an evidentiary hearing or other relief denied by a state PCR court. More specifically, infirmities in a state PCR proceeding do not raise constitutional questions in a federal habeas action. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir.1998) ("what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation"). Since errors in Petitioner's state PCR proceedings, even if presumed present, were collateral to his conviction and sentence, they could not give rise to a claim for federal habeas relief. *See Hassine*, 160 F.3d at 954; *see also* 28 U.S.C. § 2254(i); *Lambert v. Blackwell*, 387

F.3d 210, 247 (3d Cir.2004) ("[H]abeas proceedings are not the appropriate forum for [petitioner] to pursue claims of error at the PCRA proceeding."). Therefore, Petitioner's twelfth ground for habeas relief is denied.

## IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a proceeding under 28 U.S.C. § 2254 unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court will deny Petitioner a certificate of appealability.

## V.  CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED, and a certificate of appealability shall not issue. An appropriate order will be entered.


**Dated**:  February 1, 2024

JULIEN XAVIER NEALS
**United States District Judge**

36